**ZENO B. BAUCUS**
Assistant U.S. Attorney
U.S. Attorney's Office
James F. Battin U.S. Courthouse
2601 Second Ave. North, Suite 3200
Billings, MT 59101
Phone:      (406) 657-6101
FAX:         (406) 657 6989
E-mail:     Zeno.Baucus@usdoj.gov

ATTORNEY FOR PLAINTIFF
UNITED STATES OF AMERICA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> **Plaintiff,** <br><br> vs. <br><br> **ABBEY LEE COOK,** <br><br> Defendant. | CR 25-13-H-BMM <br><br><br> **AMENDED OFFER OF PROOF** |

The United States of America, represented by Zeno B. Baucus, Assistant United States Attorney for the District of Montana, files its Amended Offer of Proof in anticipation of the Change of Plea hearing scheduled for September 9, 2025.

1

## THE CHARGE

The defendant, Abbey Lee Cook, is charged by Information with three counts of Use of Wire Fraud, in violation of 18 U.S.C. § 1343.

## PLEA AGREEMENT

Cook will plead guilty to the counts in the Information pursuant to a plea agreement. The United States presented all formal plea offers to the defendant in writing. The plea agreement entered into by the parties and filed with the court represents, in the government's view, the final and the most favorable offer extended to the defendant. *See Missouri v. Frye,* 566 U.S. 134, 145-46 (2012).

## ELEMENTS OF CHARGE

In order for Cook to be found guilty of the charges contained in the Information, the United States must prove each of the following elements beyond a reasonable doubt:

First, the defendant knowingly devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and

Fourth, that in advancing, furthering, or carrying out the scheme, the defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

## PENALTY

Each count carries a penalty of a maximum 20 years imprisonment, a $250,000 fine, three years of supervised release, and a $100 special assessment.

## ANTICIPATED EVIDENCE

If this case were tried in United States District Court, the United States would prove the following:

In January 2021, Cook registered the business Abbey Lee Cook and Associates, LLC with the State of Montana. Cook, through her business entity, provided political campaign compliance services for multiple candidates and political action committees (PACS) in Montana. Her services included, but were not limited to, establishing bank accounts, depositing political donations, and filing campaign financial reports with the Montana Commissioner of Political Practice (COPP) on behalf of her clients.

In and around 2021, Cook starting volunteering for Victim No 2, an issue advocacy PAC in Montana. Her primary duty was to file reports with the Montana Commissioner of Political Practices (COPP). Cook obtained signature

3

card authority for Victim No. 2's bank account and, commencing in September 2021, began to issue checks from Victim No. 2's account to her business account without authorization. These fraudulent transfers and checks, which ranged in value from $800 to $15,000.00, resulted in a loss to Victim No. 2 of roughly $82,000.00. One such fraudulent transfer occurred on or about March 20, 2023, when Cook wrote a check from Victim No. 2's account to her business account, without authorization, in the amount of $3,000.00. Another such incident occurred on or about August 23, 2023, when Cook wrote a check from Victim No. 2's account to her business account, without authorization, in the amount of $15,000.00. Based on interviews with bank employees, these checks passed through the Federal Reserve Bank and, as such, were transmitted in interstate commerce for purpose of processing.

During this period, Cook filed false reports with the Montana Commissioner of Political Practices (COPP), materially underreporting the amount of money she took from Victim No. 2.

Victim No. 1 hired Cook in connection with a 2024 campaign for statewide office. Cook's duties included, among other activities, monitoring and paying bills on behalf of the campaign and preparing internal financial reporting documents. In her job, Cook had access to Victim No. 1's campaign account.

Commencing in March 2024, Cook began to wire money from Victim No. 1's campaign account to her own account without authorization. These fraudulent transfers occurred through October 2024 when Victim No. 1's campaign noticed an issue and Cook's access to the bank account was terminated. During this period, Cook filed false reports with the Montana Commissioner of Political Practices (COPP), materially underreporting the amount of money she took from Victim No. 1.

Victim No. 5, a Montana State representative, hired Cook in approximately in June 2023 for purpose of campaign-compliance work. Cook was provided signatory authority for Victim No 5's campaign bank account and, commencing in approximately June 2023, began to fraudulently write checks or transfer money to her business without authorization. The total loss to Victim No. 5 was roughly $53,100.00 and included a check issued on or about November 8, 2023, for $3,000.00 that, according to interviews with bank employees, was transmitted in interstate commerce because of being processed by the Federal Reserve Bank.

During the period of the alleged fraud Cook took active steps to conceal her activity. In addition to the multiple false filings with the COPP, as outlined above and relating to most of her victims in the scheme, she also ignored inquiries from her victims concerning certain financial transactions and transferred money

between victims' accounts without their knowledge and authorization. One such transfer occurred on or about July 2, 2024, when Cook transferred approximately $26,000.00 from Victim No. 2's account to Victim No. 4's campaign account. Victim No. 4, a candidate for statewide office had also retained Cook's services at the time. When flagged by representatives for Victims Nos. 2 and 4, Cook falsely said she was redirecting payments that were misdirected. When told to put that representation in writing, she never did. In a subsequent interview with law enforcement, Cook admitted that she transferred this money, without authorization or knowledge of Victims No. 2 and 4, for the purpose of covering financial obligations on behalf of Victim No. 4.

//
//
//
//
//
//
//
//

During the period of the scheme reflected in the Information, a significant percentage of the money fraudulently transferred to her account was utilized by Cook to make payments to her personal credit card, loan payments for vehicles, and payments for commercial property. In June 2025, Cook admitted much of this conduct to law enforcement. The total loss to her victims because of Cook's fraudulent conduct, as reflected in the Information, exceeded $250,000.00.

DATED this 9th day of September, 2025

        KURT G. ALME
        United States Attorney

        */s/ Zeno B. Baucus*
        ZENO B. BAUCUS
        Assistant U.S. Attorney