NICHOLAS MILLER
Avignone, Banick & Williams, PLLC
35 N. Bozeman Ave.
Bozeman, MT 59715
Phone: 406-586-8330
nmiller@abwlaw.net
Counsel for Abbey Cook

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ABBEY LEE COOK,<br><br>Defendant. | CR 25-13-H-BMM<br><br><br><br>**Defendant's Sentencing Memorandum** |

Comes now the Defendant, Abbey Lee Cook, by and through her counsel of record, and respectfully submits the following Memorandum for the Court's consideration at sentencing scheduled for November 24, 2026.

Cook pled guilty to an Information charging three counts of wire fraud under 18 U.S.C. §§ 1343, a class C felony punishable by up to 20 years imprisonment and up to a $250,000.00 fine.

Cook demonstrates a high degree of accountability for her offense, has no criminal history, and asks the Court to consider a sentence of time served plus a

term of community supervision. Alternatively, Cook asks the Court to allow her to serve any additional confinement time under home detention given that her guideline range falls in Zone C of the sentencing guidelines.

**Sentencing Recommendation**

Courts must first properly calculate the applicable range under the advisory guidelines. USSG § 1B.1(a); *United States v. Tankersley*, 537 F.3d 1100, 1109 (9th Cir. 2008) (citation omitted). However, the Court may not treat that range as mandatory or presumptive. *Gall v. United States*, 552 U.S. 38, 49, 51 (2007). They serve as merely one of several factors the Court must consider in imposing an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007).

The guidelines have also now incorporated the parsimony principle directly: that a court "shall consider the other applicable factors in 18 U.S.C. § 3553(a) to determine a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing." USSG § 1B1.1(b).

The Court must consider other factors aside from the advisory guideline range, such as the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, pertinent policy statements, the need to avoid unwarranted sentence disparity among co-defendants, and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1)-(7); USSG § 1B1.1(b)(1)-(5).

**Incarceration Recommendation**

Cook violated her pretrial release conditions by going on a trip, not being truthful or upfront with her probation officer about the trip, and consuming alcohol on the trip. PSR, ¶7. Cook admitted these violations, and also that she had been staying several days a week with family and friends and not at her primary reported residence in Helena.

As a result of these violations, Cook was detained and has been in custody since April 1, 2026. She was initially held in Bozeman, transported to Missoula, then shortly thereafter transported to the Cascade County Detention Center where she has served the remainder of her time through present. In total, the PSR notes that Cook has been in custody for 237 days.[1]

Cook asks the Court to consider a sentence of time served plus an appropriate amount of supervised release in the community. This sentence recommendation does not vary significantly from the Government's recommendation of 10 months. Considering availability of BOP earned-time credits under the First Step Act, a 10 month sentence has the potential to result in less incarceration time than Cook has already served.

[1] Using an online date-calculation tool, counsel calculates this figure is actually 238 days from April 1 through November 24, 2026, including the start and end dates.

Alternatively, because the guideline range falls within Zone C, Cook requests a within-guideline sentence of the time she has served plus an additional 69 days of home detention to account for the time between November 24, 2026 and February 1, 2027 for a total of 10 months. USSG § 5C1.1(d) and (e)(3). Cook believes that this sentence would comport with the Government's plea agreement recommendation of a low end guideline sentence.

**Recommendation Regarding Fines and Financial Obligations**

Although the PSR notes she had the ability to pay a fine based on her previous earning capacity, Cook's current and future career prospects are dim.

Cook's financial situation has completely changed since her arrest. Following these offenses, Cook focused on rebuilding her business in event planning – primarily involving weddings and floral services. Due to her arrest, she lost all clients and income for the 2026 event season and has no bookings for the foreseeable future.

The reputational damage caused by this case and by Cook canceling on her 2026 clients puts in doubt her ability to earn anything close to what she did in the past. However, Cook has thrived with helping other women in the jail environment, and is considering a future in counseling or otherwise helping the incarcerated population.

Cook seeks to prioritize putting all her earning capacity toward restitution for her victims, and therefore respectfully asks the Court to not impose a fine, and to waive interest and penalties on the restitution pursuant to 18 U.S. Code § 3612(f)(3).

Despite her crimes, and the Government's characterization that they were motivated by pure greed and a betrayal of trust, Cook does not appear to have lived a lavish lifestyle. Cook made a terrible choice to take money from her victims amidst her life falling apart – trying to keep multiple business ventures afloat and to maintain a failing and unhealthy household relationship, rather than committing crimes to fund frivolities. This by no means excuses the criminal conduct, but it does help to understand where within the broad scope of criminal behavior her actions might fall.

Cook has part ownership in a modest home which she is trying to sell.[2] Despite the PSR valuation of the home, it remains currently unsold at a substantially lower amount on the public market. She drives a 2006 Kia valued at $2,600 at the time of the PSR report. PSR, ¶123. She has many debts, and presently has no income.

[2] Half of the equity will go to her ex-husband upon final dissolution of the marriage.

Cook respectfully asks the Court to impose no fine or interest on restitution so that she can focus her efforts on working down her principle restitution obligation.

**<u>A Study in Human Failings … and Reconstruction</u>**

Courts should continue to "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Pepper v. United States*, 562 U.S. 476, 131 S. Ct. 1229, 1239-40, (2001)(internal citation omitted). Ultimately, "the punishment should fit the offender and not merely the crime." *Pepper*, 131 S. Ct. at 1239-40 (citation omitted).

Attached to this memorandum for the Court's consideration are 10 letters of support. Counsel received many more, but per the sentencing scheduling Order is limiting the attachments to these 10 as representative letters.

Each author offers a view of Abbey Cook that is not meant to minimize her crime, or elevate her good qualities to excuse her bad acts, but simply to illustrate the history and characteristics of Cook in order to assist the Court in determining what sentence is necessary - not just for this crime but for Cook as an individual.

Several letters comment on the aberrative nature of her crimes when contrasted with the rest of her life, but one in particular illustrates that her actions in this case are inconsistent with her history. Cook served for five years as a close

advisor, campaign manager, and finance director for a former member of Congress. Ex. C. Not only did she prove to be trustworthy with the substantial resources she was in charge of, she built a trust that lasts to this day despite this current case. It also illustrates that Cook did not commit the offenses against her current victims because it was simply the first time she had been placed in a position of trust; she had the opportunity in the past, and the offenses are not consistent with who she has shown herself to be in all other endeavors.

One theme that becomes apparent in the words of those who know her best is that Abbey Cook is a natural helper and problem solver. When caring for an elderly grandmother in a time of great loss, her aunt Debra comments that "I will never forget her gentleness with my mom during those hard days." Ex. H. During a different period of grieving, her cousin Ramsey describes Abbey driving scaffolding halfway across the country to help their family with the monumental task of going through the belongings of her recently deceased father. Ex. D. Abbey's sister, who works at the Lewis and Clark Humane Society, describes how Abbey is always willing to volunteer her time and resources when needed for the animals at the shelter. Ex. E. These are just a few of the many memories of Abbey's innate compassion shared in the letters received, of her time and effort given without any other motivation than to help.

Perhaps a more specific sub-category of this attribute is Abbey's inclination not just to help generally, but that she "is always aiming to seek out and include those on the periphery." Ex. J. Her friend Madeline describes her work on prior political campaigns, noting that "[w]hile serving in one of the most prominent roles in the organization, Abbey consistently looked for ways to raise up even the lowest level staff." *Id*.

Another friend Garrett describes his first foray into being a political volunteer, nervously and shyly attending a group meeting that ended with him feeling convinced never to return. Ex. B. He describes how Abbey almost sensed that he needed some prodding, reaching out to him relentlessly to offer encouragement. Looking back he notes that "Abbey was one of the first people to see potential in me before I could see it in myself." *Id*. "The Abbey I know notices people others overlook. She invests in others without expecting anything in return." *Id*.

As noted above, Abbey has spent nearly the last eight months in a place she never envisioned, the Great Falls jail. Yet her natural tendency to help those "on the periphery" seems to have followed her there. Her father notes the myriad ways in which Abbey has tried to use her incarceration time for good, attempting to help those around her find treatment opportunities, study for GED/HiSet testing, or even

assist in doing things as simple as contacting family members or the public defender's office. Ex. F.

Charlotte, who spent time with Abbey at CCDC, describes how Abbey would always give her full and undivided attention to any of the women in the jail who needed help. Ex. A. Charlotte confirms much of what Abbey's father describes, noting that "Abbey consistently prioritized helping me" and that she is "grateful for all the change she's put in motion [at the jail]." *Id*.

Although Abbey is now a felon and has unquestionably made her future more difficult, she is trying to get back on the path she has walked the entirety of the rest of her life. And despite disappointing her friends and family by committing this offense, she will make them proud of how she responds to it, by repaying what she owes and by using this period as a catalyst for positive change.

As noted above, it may even turn out, through a long and difficult process of self-reflection, that her time in jail guides Cook into a future career path in counseling that she may not otherwise have found. As her father writes, "[s]he recognizes and regrets her actions which have landed her in this situation," and yet "is determined to build a better life." Ex. F.

## CONCLUSION

Cook has served nearly 8 months in jail following her arrest and asks the Court to consider this period of incarceration sufficient to fulfill the policies and criminal sentencing objectives.

The PSR calculates a guideline range of 10 to 16 months, which the parties do not dispute. Cook has reviewed the suggested sentencing conditions contained in the PSR and waives their reading. The only condition to which she objects or requests a change is the mandatory chemical dependency counseling in paragraph 149. Cook does not appear to have a substance abuse history, and paragraph 149 does not appear to give any discretion to the probation officer (unlike, for example, paragraph 145 which allows for flexibility based on need).

Respectfully dated this 13 day of November, 2026.

AVIGNONE, BANICK & WILLIAMS, PLLC

/s/ Nicholas Miller
Nicholas Miller

Counsel for Defendant
Abbey Lee Cook

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2026, a copy of the foregoing document was served on the following persons by the following means:

( 1 ) CM/ECF
( ) Hand Delivery
( 2 ) Mail
( ) Overnight Delivery Service
( ) Fax
( ) E-Mail

1. CLERK, UNITED STATES DISTRICT COURT
ZENO BAUCUS, Assistant United States Attorney

2. ABBEY COOK, Defendant.

/s/ Nicholas Miller
Nicholas Miller
Counsel for Defendant